IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NICO BASKIN,**

      **Plaintiff,**

      v.                                                      **CASE NO. 24-3062-JWL**

**FORT SCOTT
POLICE DEPARTMENT, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff Nico Baskin is hereby required to show good cause, in writing, to the Honorable John W. Lungstrum, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is detained at the Bourbon County Jail in Fort Scott, Kansas. The Court granted Plaintiff leave to proceed *in forma pauperis*. (*See* Doc. 7.)

Plaintiff alleges in his Complaint (Doc. 1) that Bourbon County Sheriff's Deputy Trey Sharp used excessive force when arresting Plaintiff on May 14, 2023. The Complaint states that Plaintiff had an altercation with his half-sister, which resulted in him sustaining an injury to his arm that was bleeding. About ten minutes after walking away from the house, Deputy Sharp approached him. Sharp had his gun drawn. Plaintiff complied with Sharp's orders and was apprehended.

Plaintiff was then taken to the hospital by Fort Scott Police Officer Gray-Burnham. He alleges that he briefly lost consciousness in the police car. At the hospital, he had head pain, slurred speech, and nausea. A nurse asked if he uses alcohol, and Corporal Blythe answered, "He definitely uses alcohol." Plaintiff denies that he was inebriated. He believes that he must have suffered a concussion when he lost consciousness on the way to the hospital.

Plaintiff names as defendants: the Fort Scott Police Department and the Bourbon County Sheriff's Department. Plaintiff's request for relief seeks the firing of Deputy Sharp and $25,000. (Doc. 1, at 5.)

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise

a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in

3

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Improper Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

The Fort Scott Police Department and the Bourbon County Sheriff's Department are not proper defendants to a § 1983 action. These defendants are subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D.N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12, 1992)).

### B.  Federal Constitutional Claim Requirement

As noted, in a § 1983 action, the complaint must specify "the violation of a right secured by the Constitution and laws of the United States, and . . . that the deprivation was committed by a person acting under color or state law." *Bruner v. Baker*, 506 F.3d 1021, 1025-26 (10th Cir. 2007). Plaintiff does not allege that any defendant violated the Constitution or federal law.

4

### C. Excessive Force

While Plaintiff does not cite a constitutional right, he titles his claim "Excessive Force." "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id.* (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id.* (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396).

In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id.* (citation omitted).  The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

Plaintiff's claim is interesting in that force was not actually used but merely threatened. However, the Tenth Circuit has said, "The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force.  Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001).  The Court went on to say that "[w]here a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use." *Id.* at 1193.

Plaintiff argues that the threat of lethal force was excessive for what turned out to be a misdemeanor offense and a suspect with no violent history.  However, while the circumstances of how Deputy Sharp became involved are not clear from the Complaint, there had been an altercation resulting in Plaintiff bleeding profusely as he walked through town.  Sharp would not have known

6

whether or not Plaintiff was armed. While drawing his weapon may not have been necessary in hindsight, the Court cannot say it was an unreasonable action or a constitutional violation. Moreover, according to Plaintiff's account, Sharp did not continue to brandish his weapon once Plaintiff complied with the order to stop. Plaintiff's allegations fail to state a claim for the use of excessive force.

### D. Medical Neglect

Plaintiff asserts that he "did not receive proper medical treatment nor tests for [his] injuries as [he] exhibited signs of concussion." (Doc. 1, at 2.) Plaintiff titles his claim "Medical Neglect" and does not assert the violation of any constitutional right.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.[1] The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).

It is well-settled that deliberate indifference requires more than mere negligence. *See Farmer v. Brennan,* 511 U.S. 825, 835 (1994). The Tenth Circuit has made clear that "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999). As the United States Supreme Court has explained:

---

[1] The protections provided by the Eighth Amendment do not directly apply to detainees, such as Mr. Baskin. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). However, under the Fourteenth Amendment, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Shue v. Laramie Cty. Det. Ctr.*, 594 F. App'x 941, 944–45 (10th Cir. 2014) (quoting *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009)).

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind...." Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle,* 429 U.S. at 105–106 (footnote omitted).

Furthermore, Plaintiff's claim would appear to be against the hospital or hospital staff members. As noted, to state a claim under § 1983, a plaintiff "must show that the alleged (constitutional) deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48–49 (1988); *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action." *West*, 487 U.S. at 42; *Polk County v. Dodson*, 454 U.S. 312 (1981). Thus, it is of no consequence how discriminatory or wrongful the actions a plaintiff may describe; merely private conduct does not satisfy the "under color of" element and therefore no section 1983 liability exists. See *Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294–96 (2001); *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1208 (10th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006).

There is no allegation in the Complaint that the hospital where Plaintiff was treated or its employees were state actors. Consequently, Plaintiff complains of private conduct not subject to liability under § 1983.

For these reasons, Plaintiff's medical neglect claim is subject to dismissal.

**E. Relief Sought**

The first category of relief sought by Plaintiff is money damages. He does not allege any physical injury.

Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e). Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights. The Court finds that Plaintiff's claim for damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

Plaintiff also asks that the Court order the firing of Deputy Sharp. The Court is without authority to grant such relief. *See Nicholas v. Hunter*, 228 F. App'x 139, 141 (3rd Cir. 2007) ("The remaining relief requested is not available as the District Court lacks authority to order a federal investigation and prosecution of the defendants or the termination of their employment."); *Goulette v. Warren*, No. 3:06CV235-1-MU, 2006 WL 1582386, at n.1 (W.D.N.C. June 1, 2006) ("The Court notes that even if Plaintiff's claims prevailed in this case, this Court would not, based upon this law suit, have the authority to order the termination of the Defendant's employment or to grant Plaintiff an immediate, early release from jail."); *Dockery v. Ferry*, No. 08-277, 2008 WL 1995061, at *2 (W.D. Pa. May 7, 2008) (finding that the court cannot issue an order which would

direct a local government to terminate a police officer's employment) (citing *In re Jones*, 28 F. App'x 133, 134 (3rd Cir. 2002) ("Jones is not entitled to relief . . . [S]he asks this Court to prohibit the State of Delaware from filing charges against her. The federal courts, however, have no general power in mandamus action to compel action, or in this case inaction, by state officials.")); *Martin v. LeBlanc*, No. 14-2743, 2014 WL 6674289, at n.1 (W.D. La. Nov. 24, 2014) (finding that where plaintiff requested an investigation, the termination of the defendants' employment and the closure of the prison, "[s]uch relief is not available in this action"); *Merrida v. California Dep't of Corr.*, No. 1:06-CV-00502 OWW LJO P, 2006 WL 2926740, at n.1 (E.D. Cal. Oct. 11, 2006) (finding that where plaintiff prays for the termination of defendant's employment, "the court cannot award this form of relief to plaintiff) (citing 18 U.S.C. § 3626(a)(1)(A)).

### F. Motions

Plaintiff has two motions pending before the Court. The first is a Motion to Appoint Counsel (Doc. 3). Plaintiff requests the appointment of counsel based on his inability to access information due to his incarceration. (Doc. 3, at 4.)

The Court has considered Plaintiff's motion. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting

*Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion at a later stage of the proceedings.

Plaintiff has also filed an objection (Doc. 8) to the Order granting Plaintiff's motion for leave to proceed *in forma pauperis* and assessing an initial partial filing fee of $45.50, calculated under 28 U.S.C. § 1915(b)(1). Plaintiff states that he is unable at this time to pay the initial partial fee assessed by the Court. He asks that the initial fee be waived or that he be given more time to pay it. Plaintiff's objection is sustained. Payment of the initial partial filing fee is waived.

## IV. Response Required

For the reasons set forth, the Court directs Plaintiff to show cause why his Complaint should not be dismissed. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff is granted until **July 18, 2024,** in which to show good cause, in writing, to the Honorable John W. Lungstrum, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's objection (Doc. 8) to the Order requiring him to pay an initial partial filing fee of $45.50 by June 6, 2024, is **sustained**.  Payment of the initial partial filing fee is waived.  Plaintiff remains obligated to pay the full filing fee of $350.00.

**IT IS SO ORDERED**.

Dated June 20, 2024, in Kansas City, Kansas.

          **S/   James P. O'Hara**
          **JAMES P. O'HARA**
          **UNITED STATES MAGISTRATE JUDGE**